UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| APP PRESS LLC, </br></br>　　　　Plaintiff/Counterclaim Defendant, </br></br>　v. </br></br> APRESS MEDIA LLC, </br></br>　　　　Defendant/ Counterclaim Plaintiff. | CASE NO. 1:12-cv-0718-SEB-DML </br></br> **JURY TRIAL DEMANDED** |

### APP PRESS'S RESPONSE IN OPPOSITION TO APRESS MEDIA'S MOTION TO COMPEL

In its Motion to Compel and Supporting Brief ("the Motion"), Apress Media requests that the Court compel production of documents in a number of categories, including (i) documents that App Press has stated are not relevant to this litigation and that Apress Media admits are not relevant, (ii) documents that do not exist regarding an event that has not yet happened, and (iii) documents that Apress Media first sought two days before filing its Motion to Compel and that App Press both agreed to produce then and has since produced.  Apress Media also argues that App Press is withholding documents based solely on the claim that those documents are "confidential," despite the fact that no documents have been withheld solely on that basis (though some confidential documents have been withheld on the basis of being irrelevant).  None of these arguments support the granting of Apress Media's Motion to Compel and it should accordingly be denied.

**I.    Apress Media Agrees That App Press's Source Code Is Not Relevant to This Litigation But Asks the Court to Compel Its Production Anyway**

1

Apress Media's first argument is that the Court should compel the production of highly proprietary information, the source code for App Press's CMS Tool, despite the fact that the parties apparently agree it has no relevance to this litigation. Apress Media sought this source code via Requests for Production Nos. 3 and 5, and App Press objected to its production in both instances by noting that the source code was neither relevant nor reasonably calculated to lead to admissible evidence.

In response to this argument, Apress Media stated that it sought the code so that it could compare the App Press CMS Tool to its own products to determine the degree of similarity between them as well as to determine whether App Press continued to devote time and expense in developing its product in conjunction with the App Press mark. (See Exh. I to Brief in Support of Motion to Compel, May 21, 2013 Letter from Abdullah, p. 2.) Neither of these arguments provides a colorable reason for production of the source code, and App Press's counsel addressed them both in detail in a response letter sent on May 31, 2013:[1]

> The issue with your [Apress Media's] request is not just that you are requesting highly proprietary information, the release of which would cause irreparable harm to my client, but that the source code you request has no relevance to this litigation, and so we need not even get into the issue of its confidential and proprietary nature. Your client publishes print books and books in an electronic form that my understanding are similar to a PDF and that can be viewed in e-viewers. My client's product is a web-based software platform that manages content loaded into it by its users and allows them to manage apps that they create for their own use or publication (by the users, not App Press) in app stores. Although I have discussed this issue with counsel for Apress Media on numerous occasions, I have still not received an explanation as to why Apress Media believes these products are in any manner "similar," let alone similar enough to warrant production of the life blood of a tech company like my client (i.e., the source code). Please provide a more detailed explanation as to why you believe this is "relevant" other than a generic claim that you need to determine the

---

[1] A true and accurate copy of this letter is attached hereto as Exhibit 1.

> "similarity of products," as it is unclear how the source code for my client's software is necessary for you to make such a comparison.
>
> As to the issue of significant time and expense being devoted to use/develop the App Press mark, this has no apparent bearing on whether the source code should be produced. First, it is unclear how the "time and expense devoted to the use/development of the App Press mark" has any relevance to your ability to prove your claims or disprove the claims in this litigation, which revolve around infringement and not the value of my client's mark. Further, the source code would not demonstrate the amount of work that has been performed, and in fact my clients DID already produce documents evidencing the amount of revisions to the source code (in amount of code written) and time frame over which those revisions were made.

(Exh 1, p. 2.)

The lack of relevance of the source code was further reiterated by App Press's counsel during telephone conferences on this matter, and then again underscored by App Press's counsel in a June 18, 2013 letter[2] in which he stated that "We have discussed the issue of your demand for production of client's source code and I have maintained that such source code is not relevant to the issues in this litigation and accordingly will not be produced." (Exh 2, p. 2.)

In its Motion, Apress Media actually agrees with App Press that the source code is not relevant. Apress Media states in the Motion that it "acknowledges that a company's code for its software products might not ordinarily be relevant to a trademark infringement action," and even admits that "it is highly unlikely that much (if any) of that code has anything to do with the [allegedly] infringing App Press mark." (Motion p. 8.)

Nonetheless, Apress Media has filed a Motion to Compel production of this irrelevant and highly proprietary information by claiming that App Press has asserted that the source code

---

[2] A true and accurate copy of this letter is attached hereto as Exhibit 2.

3

itself is relevant.[3] However, this is simply not the case – in fact, App Press has only asserted that the time and effort developing and marketing the App Press CMS Tool in conjunction with the App Press mark is relevant. *See, e.g., Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) ("[I]nvest[ment of] significant amounts of time and money in product development and advertising" gave rise to clear prejudice.")

Further, as explained by App Press to Apress Media on multiple occasions, the source code itself provides no information or insight into the amount time and effort spent on developing this product, and this is why App Press DID provide documents showing the amount of code written during specific time periods, thus evidencing the significant expenditure of time in developing the product being marketed under the App Press mark. Apress Media also has the ability to depose App Press regarding the time spent writing this source code or interpretation of the source code line statistics that have been produced. However, the fact that time spent developing App Press's product is relevant to the goodwill associated with that product and prejudice suffered by App Press does not change the fact that the source code itself lends no insight into the amount of time spent developing and marketing this product, thus rendering it irrelevant to this point.

Accordingly, there is no need for App Press to produce its source code in this matter because it simply is not relevant. Further, Apress Media itself has admitted that it does not believe the code is relevant, and it is unclear then what is the purpose of the Motion other than to

---

[3] Apress Media has evidently agreed with the assertion that the products are not similar and has not raised this argument in its Motion to Compel.

harass App Press regarding the "life blood" of its business. The Motion to Compel should be denied.

## II. Apress Media's Argument Regarding Documents Being Withheld Due To Concerns of Confidentiality Is A Straw Man That Has No Place Before the Court

Apress Media has also made the puzzling argument that App Press is withholding documents and information based solely on the claim that that information is "proprietary" and "confidential." However, as Apress Media knows, this is simply not the case.

Although objections to the production of confidential and proprietary information were raised in the responses to written discovery served by App Press (which were served prior to the entry of a protective order in this matter),[4] documents were produced in April by App Press with designations of confidentiality under the protective order. Further, the issue of whether documents were being withheld solely due to confidentiality and proprietary concerns was raised by Apress Media more a month ago, at which time counsel for App Press very clearly informed Apress Media that "no documents were withheld solely on basis of being 'confidential,' as all documents that were considered 'confidential,' relevant and responsive were produced under the designation of 'confidential' and subject to the terms of the protective order in this matter." (Exh. 1, May 31, 2013 Letter from Cox, p. 2.)

Counsel for the parties also discussed this issue during telephone conversations, and Apress Media agreed during those conferences that their "dispute" regarding this issue had been

---

[4] In fact, the cover letter to App Press's written discovery responses indicated that confidential documents were being produced despite the fact that no protective order had yet been entered but with the understanding that the documents should be treated as confidential even though the protective order had not yet been entered or, if Apress Media would not agree to such, that the documents should be returned until the protective order had been entered by the Court. (See April 24, 2013 Cover Letter for Responses to Written Discovery, attached hereto as Exhibit 3.)

5

addressed and was no longer an issue. (See Exh. 2, p. 2, indicating that Apress Media's counsel had agreed that their dispute regarding this issue had been resolved to their satisfaction.)

Thus, it is unclear why Apress Media has raised this argument, as this is an issue that was resolved well before the filing of Apress's Motion. Regardless, Apress Media's argument should be ignored due to its inapplicability to whether documents or information have been withheld and the Motion to Compel should be denied.

**III.   Apress Media Seeks Documents "Evidencing" the Cost to App Press to Change Its Name When App Press Has Not Changed Its Name and Thus Does Know What Those Costs Might Be**

Apress Media next argues that App Press should be compelled to produce documents and information evidencing the costs of changing App Press's current name to another. Apress Media bases this argument on the fact that, during settlement communications, App Press made a protected communication that included an estimate as to the number of hours and expenses it would take to change names.

Apress Media's argument misses the point. Although App Press was willing to provide estimates in an attempting to reach settlement with Apress Media, the fact is that settlement was NOT reached and those guesses by App Press as to the cost to change their name were nothing more than speculation as to what such a change might have cost back then. In fact, it is likely that the estimates provided back then (more than eight months ago) are no longer applicable or relevant due to the growth of App Press as a company and product, and App Press simply does not have any documents evidencing the costs of an event that has not yet happened. Although it is possible that such documents will be created in the future, by experts or otherwise, for purposes of this litigation, it is unclear why Apress Media continues to insist on production of

information that is not yet relevant due to it being outdated, is speculative, and regarding an event that has not yet occurred. Apress Media is not merely asking opinion as it relates to fact, which is allowed under the scope of Rule 33, but is asking App Press's opinion as it relates to hypothetical situations that could happen at some point in the future. That App Press was willing to delve into such hypothetical for purposes of exploring settlement does not mean that the rules of discovery have changed or that App Press should be forced to produce documents evidencing the cost of changing its name when it does not have control over such documents because they do not currently exist. Accordingly, the Court should deny Apress Media's Motion to Compel this information.

    **IV.**    **Apress Media's Claim That App Press Has Refused to Produce Documents Relating to Costs Inaccurately States Discussions Between the Parties Regarding This Issue and Ignores Rule 37 Requirements**

Apress Media also argues that App Press has refused to produce documents regarding the costs of its marketing and branding efforts, and that this information directly relates to the laches defense in this matter. Apress Media's argument inaccurately states the discussions between the parties on this front.

Initially, Apress Media sought these documents under the argument that they were relevant to the issue of infringement, and App Press responded that it did not believe such documents would be relevant to the issue of infringement but that Apress Media was seeking the information to better leverage itself in settlement negotiations. (See, e.g., Exh. 1, p. 5.) Later, when the parties discussed this issue on June 10, 2013, Apress Media again indicated that it was unclear how the cost of its website, marketing costs, etc., were relevant to whether infringement had occurred.

On June 18, 2013, during a telephone conference, Apress Media for the first time admitted that the costs may not be relevant to the issue of infringement, but that they had a new theory as to this information's relevance, App Press's affirmative defense of laches. The parties had not discussed this issue before and, after consideration, App Press's counsel agreed that the costs might be relevant to the issue of laches and that he would confer with App Press regarding the existence of any such documents and, if they existed, produced them.

In correspondence between counsel on the next day, June 19, 2013, Apress Media's counsel acknowledged that App Press had agreed to look for and produce these documents but that they intended to file a Motion to Compel anyway. (See June 19, 2013, Letter from Abdullah, p. 2-3.)[5] In response, App Press's counsel indicated that it believed this was inappropriate not only because App Press had agreed to produce the documents, but also because Apress Media had not raised this issue as one in dispute when filing the Motion for Discovery Conference with the Court (see Motion for Discovery Conference, which fails to raise issues relating to RFPs 19-22), and in fact had not raised the argument regarding the relevance of these documents to laches until June 18, 2013, just one day before, at which time App Press had agreed to produce the documents. (See Exh. 5, June 19, 2013 Letter from Cox, p. 4.)[6] Thus the filing of a Motion to Compel on this issue ignored the requirements of Rule 37 and App Press's counsel indicated it would be forced to raise this issue if Apress Media included argument on this point in its Motion to Compel. (*Id.*)

---

[5] A true and accurate copy of this letter is attached hereto as Exhibit 4.
[6] A true and accurate copy of this letter is attached hereto as Exhibit 5.

Despite these communications, just two days later, on June 21, 2013, Apress Media filed a Motion to Compel documents relating to Request Nos. 19-22 based on arguments that had been discussed between the parties for the first time just three days earlier. In this Motion, Apress Media fails to inform the Court that the parties had not discussed this issue until just a few days earlier, and also fails to inform the Court that App Press had agreed to produce documents after that discussion. In fact, as of the date of this filing, App Press has already produced documents regarding these issues, including complete Quickbooks expense/cost transaction reports for App Press from October 1, 2011 through July 17, 2012 (the date on which Apress Media filed its claims against App Press).

Apress Media has refused to adhere to the requirements of Rule 37 for informal resolution of issues, and in fact, similar to the "dispute" discussed above regarding the "confidentiality" designation, this dispute as raised in their Motion was one that was resolved before the Motion's filing and documents regarding this issue have already been produced. Due to their failure to adhere to the requirements of Rule 37, and also due to the fact that these documents have been produced, Apress Media's argument should be ignored by the Court and the Motion to Compel denied as moot and for failure to adhere to Rule 37.

## CONCLUSION

For the reasons stated herein, App Press LLC asks that the Court issue an order denying Apress Media's Motion to Compel and for all other remedies just and appropriate.

Respectfully submitted,

/s *Jacob R. Cox*
Jacob R. Cox, Attorney No. 26321-49
**COX LAW OFFICE**
1606 N. Delaware Street
Indianapolis, Indiana 46202
T: 317.884.8550
F: 317.660.2453
jcox@coxlaw.org
*Attorney for Plaintiff/Counterclaim Defendant App Press LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was filed via the Court's CM/EMF system, which will serve notice of filing on the following counsel of record via the CM/EMF system, on the 28th day of June, 2013:

| | |
|---|---|
| Deborah Pollack-Milgate<br>dmilgate@btlaw.com | Jeff M. Barron<br>jeff.barron@btlaw.com |
| Sadaf R. Abdullah<br>sadaf.abdullah@wilmerhale.com | Mark G. Matuschak<br>mark.matuschak@wilmerhale.com |
| Louis W. Tompros<br>louis.tompros@wilmerhale.com | Jane A. Dryer<br>jane.dryer@wilmerhale.com |
| Vinita Ferrera<br>vinita.ferrera@wilmerhale.com | |

/s *Jacob R. Cox*
Jacob R. Cox