UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| APP PRESS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:12-cv-00718-SEB-DML |
| APRESS MEDIA LLC, ) | |
| ) | |
| Defendant. ) | |

## Order on Defendant's Motion to Compel (Dkt. 58)

Defendant Apress Media LLC ("Media") seeks an order compelling plaintiff App Press LLC ("Press") to provide information and documents responsive to Media's Interrogatory 14 and Document Requests 3, 5, 11, 19, 21, and 22.

Press filed this suit on May 24, 2012, seeking a declaratory judgment that its use of the trademark and service mark "App Press" does not infringe on any trademark held by defendant Media "including, specifically, the trademark and service mark "Apress." Complaint, Dkt. 1, at p. 2. According to the complaint, Press created and licenses web-based software, known as the App Press CMS Tool or the App Press, which allows users to create an application that can be downloaded and used on mobile devices such as phones and tablets but without writing software code to do so—that function is provided by the App Press CMS Tool. *Id.* at p. 3. In August 2011, Media sent a cease and desist letter to Press asserting that Press's use of and rights to the mark "App Press" infringes on Media's mark "Apress" and demanding that Press stop using and abandon "App

Press." Press responded to the letter, orally and in writing to Media's counsel, and provided information in an email sent on September 19, 2011, explaining its position that "App Press" does not infringe "Apress." *Id.* at p. 5. Press did not receive a response until May 8, 2012, in which Media continued to assert that Press's use of App Press was infringing and to demand that Press cancel and abandon the App Press trademark. In the meantime, Press "devoted significant time and expense in continuing to use and develop the App Press mark in marketing, licensing, and developing the App Press CMS Tool and product, including extensive revisions testing and development of a new and improved version of the App Press CMS Tool that was to be released in May 2012." *Id.* at pp. 5-6.

Media filed a counterclaim that, among other things, alleges that Press's use of App Press infringes the Apress mark. Counterclaim, Dkt. 13. Among its defenses to the counterclaim, Press contends that Apress's claims are barred by the doctrine of laches. Response to Counterclaim, Dkt. 25, at p. 8.

The present discovery dispute concerns the production of information and documents by Press that Media contends are relevant to Press's laches defense, including Press's assertion that its continued development of the App Press CMS Tool and of the strength of its App Press mark constitute expenses either recoverable from Media or reflective of prejudice or injury it suffered because of Media's purported delay in asserting its rights. Press does not dispute Media's contention that a laches defense cannot succeed without some showing by Press

that it was prejudiced by delay, nor does Press dispute that it intends to show that its investment of "time and money in product development and advertising" satisfies, at least in part, the prejudice element of the laches defense.

## The Discovery Requests

### *Source Code*

Media's document requests 3 and 5 seek Press's source code for each product marketed by Press. Press refuses to provide source code for its products because the code is confidential and proprietary and the life blood of its business and because it does not believe that revelation of its source code is necessary for Media to evaluate or rebut Press's laches defense or any other claim in this case.

The court, however, agrees with Media that Press has put at issue its alleged substantial investment in product development including "extensive revisions testing and development of a new and improved version" of its software, and that production of source code is one way in which Media could determine the extent to which the revisions and development of the App Press CMS Tool claimed by Press can be tied (or not tied) to Media's delay in enforcement of the Apress mark. The court is sympathetic to protecting against unnecessary revelation of source code, and directs the parties to confer further regarding the scope of information—short of source code, at this point—that will permit Media to explore reasonably Press's claim of prejudice based on its investment in software development. There may be other information and documents Press can provide that will permit a fair exploration of its claim.

3

The court DENIES Media's request to compel the production of source code but without prejudice. If, after review and analysis of other documents and information the parties can agree are relevant to and will be produced regarding Press's software development investment assertions, Media continues to believe that source code is reasonably necessary, Media may renew its motion. Press will bear the burden of demonstrating why the information and documents it provided are sufficient and why the production of source code is unnecessarily cumulative or a burden that outweighs its likely benefit to the case. Press is directed to preserve its documents in a manner that will permit the court to grant meaningful relief to Media in the future should the court later find that source code must be produced.

***Costs Associated With Changing the App Press Mark***

Document request 11 and interrogatory 14 seek information regarding the costs associated with changing the App Press mark. Press objects to providing this information because it has not changed its name or discontinued the use of the mark so it "simply does not have any documents evidencing the costs of an event that has not yet happened." (Opposition Brief, Dkt. 68 at p. 6). Press does not contest that efforts in exploring a name change or the likely expenses it will incur because of any name change are relevant. And just because Press's damages or harm it may suffer because of any name change are not static does not mean that it has no information to provide responsive to document request 11 and interrogatory 14.

The court therefore compels Press to respond to document request 11 and interrogatory 14 and produce non-privileged documents it currently possesses or controls "relating to any search or investigation conducted . . . relating to alternate names or marks" and to identify the "steps" it believes would be required to cease using the APP PRESS mark, even if it is unable at this time to calculate the cost and time required for each step. With respect to the identification of source code referenced in interrogatory 14, at this time Press may generally describe the amount of effort and cost it believes will be required to modify source code to effect a name change, and explain the bases for that description.

***Other Costs Information***

Document requests 19, 21, and 22 seek discovery regarding Press's costs in connection with using its mark, including information (a) regarding domain names and web sites; (b) revenues, costs, and profits relating to sales of products or services that use the mark; and (c) costs and expenses in connection with marketing materials. Press does not contest the relevance of this information, but contends that Media's motion regarding these matters was premature because the parties had not fully explored their differences regarding these requests, Media had only recently claimed that the documents are relevant to the laches defense, and Press has now, in fact, produced responsive documents. Media responds that Press has agreed to produce only documents created during the period September 2011 to May 2012 (the 8-month period covering the time that Media took to respond to Press's assertion that its mark was not infringing), and that it is entitled to documentation

created at other times so that it may fully explore whether Press seeks to claim prejudice for costs that it would have incurred without regard to any purported delay by Media in asserting its rights.  The court agrees with Media.  The documents requested by Media in document requests 19, 21, and 22 are relevant and Press has not shown that producing them imposes an unreasonable burden.

## Conclusion

Media's motion to compel (Dkt. 58) is GRANTED IN PART and DENIED IN PART.  Press must provide the information and documents requested in interrogatory 14 and document requests 11, 19, 21, and 22 within fourteen days of the entry of this order.  Press is not required, at this time, to produce its source code, but the parties must cooperate with one another regarding the production by Press of information and documents other than source code that will allow Media to evaluate Press's claim of the work associated with software development it attributes to Media's delay or that otherwise forms the basis of any claim or defense in this case.

So ORDERED.

Date: 07/19/2013

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

+Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system