UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| APP PRESS LLC, | ) |
|         Plaintiff/Counterclaim Defendant, | ) ) ) ) CASE NO. 1:12-cv-0718-SEB-DML |
| v. | ) ) **JURY TRIAL DEMANDED** |
| APRESS MEDIA LLC, | ) ) |
|         Defendant/ Counterclaim Plaintiff. | ) ) ) |

**APP PRESS LLC'S RESPONSE IN OPPOSITION TO APRESS MEDIA LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ON ISSUE OF LACHES)**

**I.     Introduction**

Apress Media has filed a motion for summary judgment on the defense of laches (the "Motion") based on an argument that laches should never be invoked by this Court unless the period of delay at issue is lengthier than two years.  In arguing this point, Apress Media claims that the delay in this matter is eight months, when in fact it is at least thirteen, and fails to provide any justification or excuse for this period of delay.  In fact, evidence before the Court demonstrates that Apress Media anticipated filing litigation against for 13+ months prior to the time it filed its claims, and the only explanation for why it did not do so early is that Apress Media chose to wait and see whether App Press would be successful in building its business around the App Press mark.  Such delay is expressly not permitted by the Seventh Circuit and Apress Media's delay should be found to be unreasonable for purposes of laches.

Apress Media also argues that App Press did not suffer prejudice due to the 13+ month delay by Apress Media and accordingly cannot prevail on its defense of laches.  However,

1

prejudice can be presumed in cases such as this, where a party's delay is both unreasonable and inexcusable, and Apress Media has not provided evidence sufficient to overcome this presumption. Additionally, Apress Media itself has cited to testimony demonstrating that App Press has suffered prejudice including through App Press's efforts to build its company around the App Press mark during that time, App Press's change in economic position, and App Press's accumulation of goodwill in the market place.

## II.    Statement of Material Facts Not In Dispute

Apress Media learned of App Press and its use of the mark "App Press" by, at the latest, June 14, 2011.  (See Apress Media Privilege Log, attached hereto as Exh. A.)  By June 16, 2011 Apress Media had exchanged several emails with its attorneys (both in-house and at Wilmer Hale), and claims that it already then anticipated litigation against App Press regarding the App Press mark.  (*Id.*)

Apress Media's discovery of the App Press mark occurred squarely in the middle of the notice period provided by the USPTO for parties to file an opposition to a mark for which registration has been applied, as notice of App Press's application to register the mark "App Press" was published on May 24, 2011, and the notice period ran for thirty days up until June 23, 2011.  (Glas Aff. at ¶ 7, attached hereto as Exh. B.)  Despite its claimed belief that the App Press mark infringed on the Apress mark, Apress Media did not file an opposition to App Press's registration of the App Press mark during this notice period nor did it request that the time to oppose the registration be extended.  (*Id.*)  Instead, Apress Media took no action until after the USPTO formally registered the App Press mark to App Press.  (*See* Exh. A; *cf.* Exh. A to Cox Aff., attached hereto as Exh. C.)

On August 10, 2011, the day after the USPTO registered the mark "App Press" to App Press, Apress Media again began to communicate internally regarding the App Press mark by drafting documents that were purportedly in anticipation of litigation against App Press. (*See* Exh. A.) On or about August 15, 2011, counsel for Apress Media sent a cease and desist letter to App Press demanding that App Press abandon its use of and rights to the mark "App Press" that had been registered just days before. (See Exh. A to Cox Aff.; *cf.* Apress Media's Answer to ¶¶ 8-9 of the Complaint.) Apress Media based its cease and desist demands on a claim that App Press's use of the registered mark "App Press" "constitute[s], among other things, trademark infringement, unfair competition, cyperpiracy and dilution in violation of Sections 32(1), and 43(a), (c) and (d) of the Lanham Act and subject your company to liability for actual or statutory damages, disgorgement of any profits it may receive for operating the website, as well as costs, attorney fees and punitive damages." (Exh. A to Cox Aff.) The cease and desist letter went on to demand that App Press "immediately" agree to cease use of and abandon the registered mark and trade name "App Press." (*Id.*) Apress Media did not explain in that letter why it had not filed an opposition to the mark during the notice period or why it had waited to contact App Press regarding the mark until after it was registered. (See generally *id.*)

App Press received this letter on Friday, August 26, 2011 and forwarded it to its counsel, who promptly contacted Apress Media's counsel on Monday August 29, 2011 by phone and left a voicemail. (Glas Aff. at ¶ 9; Cox Aff. at ¶ 3.) A week and a half later, Apress Media's counsel responded to this call and, after exchanging voicemails, counsel for the parties finally were able to confer in mid-September regarding the issues set forth in the 2011 Cease and Desist Letter. (Cox Aff. at ¶¶ 3-6.)

During that conversation, Apress Media's counsel claimed that the marks were pronounced identically, and repeatedly pronounced the word "Apress" not as "A Press," but instead in a fashion similar to the "App Press" mark. (*Id.* at ¶ 7.) Apress Media's counsel also insisted that they believed App Press published books that would be confused with Apress Media's books, an assertion that App Press's counsel indicated was incorrect. (*Id.*) After several minutes of conversation, and based on the apparently inaccurate view by Apress Media's counsel as to the nature of App Press's product, App Press's counsel agreed to send an email describing the product sold by App Press and explaining why App Press believed no infringement existed. (*Id.*) This email was sent on September 19, 2011 and sets forth a variety of reasons why infringement does not occur between the marks, including the fact that they are visually distinct, pronounced differently, and used in conjunction with entirely different products (web-based software for creating apps versus books). (Exh. C to Cox Aff.)

Apress Media and its counsel did not respond to this email in the following months in any manner, and App Press, believing that this issue was closed, resumed its focus on continuing to use and develop the value of the App Press brand name in marketing, licensing, and developing the CMS Tool, including extensive revisions, testing and development of a new and improved version of the CMS Tool and App Press website that was to be released in May, 2012. (Glas Aff. at ¶ 10.) During this period of time, App Press continued to increase its visibility and viability in the marketplace, and was featured and marketed in a variety of venues including via software reviews on blogs and websites and also by attending and/or being awarded at conferences and competitions for tech companies such as App Press. (*Id.*)

On May 8, 2012, approximately eight months after receiving the email from App Press's counsel setting forth the reasons that no infringement existed between the App Press and Apress Media marks, Apress Media's counsel emailed App Press's counsel to again assert that App Press's use of the App Press mark was infringing on the Apress Media mark and that App Press must cancel and abandon its use of App Press's registered trademark.  (Exh. D. to Cox Aff.) This second cease and desist demand included a variety of factual assertions that Apress Media claimed demonstrated actual confusion existed and further confusion was likely, including claims that (i) "more than a thousand users" had searched for the term "App Press" in an attempt to reach or while on Apress Media's website, (ii) Apress Media and App Press pronounced their names identically, and that (iii) Apress Media had published and maintained a large number of its "works" as apps in the Apple App Store.  (*Id.*)

Surprised that this issue had arisen again after almost a year of silence by Apress Media, and to ensure that the infringement claims were resolved as quickly as possible and before App Press spent even further years developing the product and goodwill associated with the App Press mark, App Press sought guidance from this Court as to whether its mark infringed as claimed by Apress Media via the filing of a declaratory action on May 24, 2012. (Glas Aff. at ¶¶ 11, 13.) After seeking an extension of time to consider the claims that it had both anticipated filing for more than a year, Apress Media filed its counterclaims against App Press on July 17, 2012. (Docket. Nos. 7, 13.)  Accordingly, Apress Media delayed filing claims against App Press to enforce its rights for a period of time equal to at least 13+ months.  (June 14, 2011 to July 17, 2012.)

5

Since that time, discovery has revealed that various "factual assertions" made by Apress Media in its second cease and desist communication were not true. For example, Apress Media has since admitted that it pronounces its mark "A Press," which is not at all identical to "App Press," and documents show that the USPTO insisted on a pseudo mark for the "Apress" mark prior to its registration to clarify that its pronunciation as registered is "A Press." (Cox Aff. at ¶ 10; Notice of Pseudo Mark, attached hereto as Exhibit D.) Apress Media also has not published and does not maintain any apps in the Apple App Store. (See Aff. of Glas at ¶ 12; *cf.* Apress Media's Answer to Int. No. 9 and documents identified therein, attached to App Press's Appendix of Exhibits to Motion for Summary Judgment as Exhibits 8 and 9 (Docket No. 109).[1])

Additionally, the web analytics reports cited by Apress Media do not show that "more than a thousand users" had searched for the term "app press" on or while searching for Apress Media's website, and in fact Apress Media has not identified even a single consumer who has confused the parties' marks or products. (See Apress Media's Answer to Int. No. 5 and 12, attached as Exhibit E hereto; *cf.* documents identified in response to Int. No. 12, attached to App Press's Appendix of Exhibits to Motion for Summary Judgment as Exh. 10 (Docket No. 109); *see also* Cox Aff. at ¶ 12.)

---

[1] Due to the large size of some of the exhibits already submitted to the Court in relation to App Press's pending Motion for Summary Judgment, App Press will cite to the docket for these exhibits rather than resubmitting them.

### III.  Legal Standard

"A defense of laches is available where there has been a lack of diligence by the party against whom the defense is asserted and prejudice to the defending party." *Lingenfelter v. Keystone Consolidated Industries, Inc.,* 691 F.2d 339, 340 (7th Cir. 1982).  A request for relief in a trademark infringement action is barred by laches when a plaintiff's delay is "unreasonable, inexcusable, and prejudicial to the defendant." *Blue Ribbon Feed Co. v. Farmers Union Cent. Exchange, Inc.,* 731 F.2d 415 (7th Cir. 1984).  A laches defense does not divest the trademark owner of the right to use the mark but may deprive him or her of any remedy for infringing uses by others. *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997) (citations omitted).  "Generally speaking, the relevant delay is the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit...." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 949 (10th Cir. 2002).

The Seventh Circuit has been clear that "a trademark owner who has full knowledge of infringement should not be permitted 'to wait and see how successful his competitor will be and then destroy with the aid of court decree, much that the competitor has striven for and accomplished.'" *Wisconsin Cheese Group, Inc. v. V&V Supremo Foods, Inc.*, 537 F. Supp. 2d 994, 1002 (W.D. Wis. 2008), citing *Hot Wax v Turtle Wax*, 191 F.3d 813, 823 (7th Cir. 1999) (quoting *Polaroid Corp. v. Polarad Electronics Corp*., 287 F.2d 492, 498 (2d Cir. 1961)).  In fact, prejudice may be presumed when the delay is unreasonable and inexcusable. *Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008, 1009 (7th Cir. 1970); *cert. denied,* 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971).

As an equitable doctrine, laches is "not fixed by any unyielding measure, but to be determined in each case under its factual situation, and allowable 'where the enforcement of the assured right would work injustice.'" *Oreck Corp. v. Thomson Consumer Electronics, Inc.*, 796 F. Supp. 1152, 1161 (S.D. Ind. 1992), citing *Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008, 1012 (7th Cir. 1970); *Piper Aircraft Corp. v. Wag-Aero, Inc.,* 741 F.2d 925 (7th Cir. 1984). In conducting this analysis, "the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability must be weighed to determine whether the [plaintiff] dealt unfairly with the alleged infringer by not promptly bringing suit. In sum, a district court must weigh all pertinent facts and equities in making a decision on the laches defense." *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1034 (Fed. Cir. 1992).

Although a presumption of unreasonableness exists where delay continues beyond an analogous state statute of limitation, courts have noted that a shorter period of delay should not be used in and of itself to bar the laches defense:

> Rather than refusing to apply laches when plaintiffs bring claims within the analogous state statute of limitations period as [Plaintiff] suggests, courts have used this analogous limitations period as a baseline for determining whether a presumption of laches exists.…Without the availability of the application of laches to a claim arising from a continuing wrong, a party could, theoretically, delay filing suit indefinitely. It would certainly be inequitable to reward this type of dilatory conduct and such conduct would necessarily warrant application of laches in appropriate circumstances. Thus, we conclude that whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the sole indicator of whether laches may be applied in a particular case.

*Hot Wax Hot Wax v Turtle Wax*, 191 F.3d 813, 821-22 (7th Cir. 1999).

Thus, delay is not "reasonable" simply because it is for a period of time that is less than the analogous state statute of limitations. Instead, the determination whether delay is

unreasonable, inexcusable, and prejudicial rests within the "sound discretion of the trial court" and that determination will not be disturbed absent a "clear abuse" of that discretion. *Baker Manufacturing Co. v. Whitewater Manufacturing Co.*, 430 F.2d 1008, 1009 (7th Cir.1970), cert. denied, 401 U.S. 956, (1971).

### IV.   Argument

#### A.  Apress Media's Delay Was Unreasonable

Apress Media argues that the Seventh Circuit has a "two-year minimum" before delay may be deemed unreasonable for purposes of establishing laches (Mot. p. 6.); however, this argument is incorrect, as the two year period cited by Apress Media is only the length of time after which any such delay is **presumed** to be unreasonable such that the burden of proof shifts to the delaying party. In fact, this very argument was specifically raised by the plaintiff and rejected by the Seventh Circuit in *Hot Wax*, 191 F.3d 821-22, and should similarly be ignored by this Court.

Other than arguing that a delay of less than two years can never suffice for laches, Apress Media makes no attempt to excuse or otherwise explain why the 13+ months of delay by Apress Media should be considered "reasonable." In fact, the evidence before the Court demonstrates that Apress Media had actual knowledge of App Press's use of its mark and application to register the mark during the period when Apress Media could have simply filed an opposition to the registration with the USPTO (or at least requested more time to determine whether it wished to file such an opposition), but Apress Media did not file such an opposition or otherwise take action to prevent the mark from being registered to App Press.

Instead, and despite the fact that Apress Media admits it contemplated filing litigation against App Press based on claimed infringement even during the period of time when an

9

opposition to the registration of the mark could have been filed, Apress Media waited until immediately after the App Press mark was registered to even notify App Press that it believed the mark infringed on Apress Media's mark. Although Apress Media has offered no evidence explaining its delay, this delay appears to have been done for tactical reasons of waiting for App Press to have ownership of the mark prior to Apress Media's claim of infringement, likely due to a desire to purchase and/or use the App Press mark by Apress Media.

 Similarly, after App Press's response to the cease and desist communication setting forth the reasons that no infringement exists between the parties' marks, Apress Media again sat on its hands rather than taking steps to respond to App Press or enforce Apress Media's legal rights in its mark despite continuing to "anticipate" litigation with App Press over this issue during this entire period of time. In fact, Apress Media waited eight months before even responding to App Press's September 19, 2011 communication. Further, although Apress Media has not provided any evidence to the Court explaining this delay, it appears that Apress Media chose to proceed as courts have explicitly indicated is not to be permitted, i.e., to "wait and see how successful his competitor will be" and only act when success is achieved such as App Press had achieved by the time the second cease and desist communication was sent in May, 2012.

 Further, and as set forth in greater detail in App Press's Motion for Summary Judgment and supporting Memorandum, Apress Media appears to also have delayed taking legal action in order to try and convince App Press to cease use of its mark based on false factual assertions by Apress Media regarding confusion between the marks and similarity of the parties' products. For example, Apress Media claimed that the company marks were pronounced identically (when they were and are not) and also that Apress Media published apps in the Apple App Store. These

statements were simply not true and the Court should not condone such misrepresentations in cease and desist communications by finding that it is reasonable to delay acting on a party's rights for purposes of making such misrepresentations in hopes of tricking a party to give up its rights to a registered mark.

All told, Apress Media claims that it anticipated litigation against App Press for 13+ months, but offers no excuse for its failure to act during this period of time. Although 13+ months is not "presumptively" unreasonable, considering that this delay included a failure by Apress Media to file an opposition to the registration of App Press's mark and that Apress Media knew that the company whose mark it was targeting was a start-up company that could be expected to invest in its name value and recognition heavily as it grew, the Court should find that Apress Media's delay was unreasonable or, at least, that a question of fact exists as to whether it was reasonable such that summary judgment should be denied.

### B. Apress Media's Delay Has Prejudiced App Press

"Economic prejudice exists when a trademark owner's delay caused the alleged infringer to build up a valuable business around its trademark in a way that would not have happened if the trademark owner had asserted its rights promptly." *Wisconsin Cheese Group, Inc. v. V&V Supremo Foods, Inc.*, 537 F. Supp. 2d 994, 1004 (W.D. Wis. 2008). In considering whether such prejudice exists, "[t]he proper inquiry is whether there has been a change in the economic position of the alleged infringer during the period of delay." *ABB Robotics INc v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995) (internal citations omitted).

Here, as admitted by Apress Media in its Motion, App Press has presented ample evidence that it built up its business around its registered mark "App Press" during the period of

11

delay by Apress Media.  When Apress Media first learned of the App Press mark, App Press was still in its infancy as a company (the public version of the App Press website and CMS Tool was only first made available on May 24, 2011),[2] and in fact App Press's financial records evidence that it had not yet received any customer fees at that time.  (Exh. 9 to Mot.)  By the time Apress Media filed its claims, these same records evidence that not only had App Press spent a significant amount of money on its product including marketing and branding services tailored to the "App Press" mark,[3] but also that App Press had grown its business and changed its economic position by compiling a customer base that paid user/subscriber fees to App Press on a recurring basis. (*Id.*) App Press also developed the goodwill and name recognition of its brand during this time, including via various articles published about App Press on such websites as pcmag.com (March 16, 2012 article), cmswire.com (June 11, 2012 article), macnews.com (July 13, 2011 article), dailytekk.com (April 2, 2011 article).  (Exh. 5 to Mot., App Press's Answer to Int. No. 11.)

Apress Media argues that *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609 (7th Cir. 1965), stands for the proposition that any expense or damage incurred by a defendant after receipt of a cease and desist letter cannot constitute "prejudice" for purposes of a laches defense. However, this proposition is not actually set forth in that decision and in fact conflicts with case law where courts have found that laches applied in trademark infringement cases due to prejudice occurring after receipt by the alleged infringer of a cease and desist letter.  *See, e.g., Wisconsin Cheese Group, Inc. v. V&V Supremo Foods, Inc.*, 537 F. Supp. 2d 994, 1003-04

---

[2] *See* Exh. 5 to Mot., App Press's Answer to Int. No. 6.
[3] *See* Exh. 5 to Mot., App Press's Answer to Int. No. 10; *cf.* Exh. 8 to Mot.; *cf.* document entitled Estimated Expense Associated with Name Changes (as of September, 2012), produced as a Confidential document by App Press and attached hereto as Exh. F.

(W.D. Wis. 2008) (prejudice for purposes of laches occurred during period of time after alleged infringer's receipt of cease and desist letter). Further, in the *Tisch* case, the parties actually each operated hotels utilizing the exact same mark, "Americana," and thus it is readily distinguishable from this case where the parties have distinct names (App Press vs Apress Media) and offer distinct products (software vs books).

In fact, an alleged infringer can prove reliance by relying reasonably on defendant's inaction when the alleged infringer decides to expand its business. *Wisconsin Cheese Group, Inc. v. V&V Supremo Foods, Inc.*, 537 F. Supp. 2d 994, 1004 (W.D. Wis. 2008), citing *A.C. Aukerman,* 693 F.2d at 702 ("[N]otice from a [plaintiff] to the defendant that infringement has occurred, accompanied by a threat of enforcement, and followed by an extended period of non-enforcement, is affirmative conduct from which an alleged infringer could reasonably infer that the claim against it had been abandoned."). Here, Apress Media makes much of the fact that they never confirmed the issue was "resolved," but given that Apress Media demanded a response within ten days of App Press's receipt of the cease and desist letter, it would be reasonable to expect Apress Media to have responded in a similar time period to the September 19, 2011 communication sent by App Press's counsel setting forth why no infringement occurred.

Further, it is not unreasonable that App Press would believe the issue would be resolved by its sending of the September 19, 2011 communication, as it was apparent that Apress Media's August cease and desist letter was based on a misunderstanding of the product offered by App Press and a failure to consider all relevant factors. Thus, because Apress Media did not respond in a similar time period as it had demanded App Press respond (10 days from receipt of the

communication), App Press should be found to have proceeded with building its business around the App Press mark in reasonable reliance on Apress Media's silence as indicative of their determination to abandon the infringement claims.

## V. Conclusion

For the foregoing reasons, Apress Media's Motion for Summary Judgment on the issue of laches in Apress Media's favor should be denied and the Court should either enter summary judgment in favor of App Press on the affirmative defense of laches or order that this issue be determined at trial.

Respectfully submitted,

/s *Jacob R. Cox*
Jacob R. Cox, Attorney No. 26321-49
**COX LAW OFFICE**
1606 N. Delaware Street
Indianapolis, Indiana 46202
T: 317.884.8550
F: 317.660.2453
jcox@coxlaw.org
*Attorney for Plaintiff/Counterclaim Defendant App Press LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via the Court's CM/EMF system, which will serve notice of filing on the following counsel of record via the CM/EMF system, on the 2nd day of December, 2013:

Deborah Pollack-Milgate
dmilgate@btlaw.com

Jeff M. Barron
jeff.barron@btlaw.com

Martin Gilmore
Martin.gilmore@wilmerhale.com

Mark G. Matuschak
mark.matuschak@wilmerhale.com

| | |
|---|---|
| Louis W. Tompros<br>louis.tompros@wilmerhale.com | Jane A. Dryer<br>jane.dryer@wilmerhale.com |

Vinita Ferrera
vinita.ferrera@wilmerhale.com

                /s *Jacob R. Cox*  
                Jacob R. Cox