UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| APP PRESS LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | CASE NO. 1:12-cv-0718-SEB-DML |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| APRESS MEDIA LLC, | ) | |
| | ) | |
| Defendant/ Counterclaim Plaintiff. | ) | |

## <u>AFFIDAVIT OF ATTORNEY JACOB R. COX</u>

The Affiant, Attorney Jacob R. Cox, hereby states as follows:

1.      I am of legal age of majority, I am fully competent to testify to the facts stated herein, and I do so of my own personal knowledge.

2.      I am an attorney who represents the company App Press, LLC.

3.      On August 29, 2011, I contacted Apress Media's counsel, Wilmer Hale, regarding a cease and desist letter (dated August 15, 2011) that they had sent to App Press. I was unable to reach the author of that letter, and left a voicemail indicating that I was responding to the letter and asking that they call me back to discuss it. A true and accurate copy of the cease and desist letter at issue is attached hereto as Exhibit A.

4.      Wilmer Hale did not return my call until September 8, 2011, when Attorney Barbara Barakat called my office and left a voicemail. This voicemail did not identify her client by name, but only stated that it was in reference to my client App Press.

5.      On September 12, 2011, Ms. Barakat again called my office and left a voicemail in which she did not pronounce her client's name as "A Press," but instead in a fashion similar to

"App Press." A true and accurate copy of this voicemail is being submitted contemporaneously herewith to the Court as Exhibit B to this affidavit.

6. After receiving this message, I again called Ms. Barakat back and was finally able to reach her in person to discuss the infringement claims by her client.

7. During this conversation, Ms. Barakat claimed that the marks were pronounced identically, and repeatedly pronounced the word "Apress" not as "A Press," but instead in a fashion similar to "App Press." Ms. Barakat also insisted that they believed App Press published books that would be confused with Apress Media's books. I assured Ms. Barakat that App Press is not a book publisher, but instead sold software that allowed individuals to create apps code free. Further, and based on the apparently inaccurate view by Ms. Barakat as to the nature of App Press's product, I agreed to consult with my client and then send an email describing the product sold by App Press and explaining why App Press believed no infringement existed.

8. I sent this email on September 19, 2011. The email set forth a variety of reasons why infringement does not occur between the marks, including the fact that they are visually distinct, pronounced differently, and used in conjunction with entirely different products (web-based software for creating apps versus books). A true and accurate copy of this letter is attached hereto as Exhibit C.

9. On May 8, 2012, approximately eight months after my September 19, 2011 email to Apress Media's counsel, Apress Media's counsel emailed me to again assert that App Press's use of the App Press mark was infringing on the Apress Media mark and that App Press must cancel and abandon its use of App Press's registered trademark. A true and accurate copy of this second cease and desist demand is attached hereto as Exhibit D.

10.    After my client filed a request for declaratory action in this Court, and Apress Media responded by filing its counterclaims, counsel for the parties attended a an initial pretrial conference on September 6, 2012. During this pretrial conference, when queried by the Magistrate Judge, counsel for Apress Media admitted that the "Apress" mark is properly pronounced "A Press." Apress Media's counsel qualified this statement by stating that people in India who do not speak English might mispronounce the word. However, since that conference, Apress Media's counsel has admitted to me during discovery conversations that anyone pronouncing the word "Apress" in a manner identical to "App Press" would be mispronouncing the name of their client.

11.    According to the USPTO trademark database, Apress Media owns not only the mark "Apress," but also the marks "Books for professionals by professionals" and "The Expert's Voice." Apress Media also owned the mark "The Author's Press" for a number of years but cancelled it on May 17, 2013 for unknown reasons. The trademark database entries for all four of these marks, as maintained by the USPTO, are attached respectively hereto as Exhibits E, F, G, and H, and were accessed on the USPTO's trademark database at http://tess2.uspto.gov on October 22, 2013.

12.    Although Apress Media has produced various search reports evidencing the terms used by engine searchers to come to Apress Media's website, none of the analytics information produced by Apress Media appears to evidence search terms used by visitors once on Apress Media's website.

13.    Similarly, Apress Media has produced no evidence showing that individuals who came to their website through searches that include the term "appress," "apppress," "app press," or any other, did so due to confusion between the "Apress" and "App Press" marks.

Further Affiant Sayeth Not.

I AFFIRM, UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE
UNITED STATES OF AMERICA, THAT THE FOREGOING REPRESENTATIONS ARE
TRUE AND CORRECT.

10/27/2013
Date

Jacob R. Cox

WILMERHALE

August 15, 2011

Michael J. Bevilacqua

+1 617 526 6448(t)
+1 617 526 5000(f)
michael.bevilacqua@wilmerhale.com

**Via Certified Mail Return Receipt Requested**

App Press LLC
2238 Brightwell Place
Indianapolis, Indiana 46260

Re: Our Client:  Apress Media, LLC
       Infringement of Trademark Rights

Dear Sir or Madam:

We represent Apress Media, LLC ("Apress"), a well-known technical publishing firm based in New York City.  Apress is devoted to meeting the needs of, software developers, programmers and IT professionals with more than 1,000 books in print and electronic formats. Apress provides high-quality content that helps serious technology professionals build a comprehensive pathway to career success.  Apress strives to promote innovation in publishing, boasting a global network of authors, editors, technical reviewers, and sales and marketing teams who work together to provide its readers with books and electronic products of the highest quality. Through these innovations Apress has become the leading publisher in programming for the iPhone, iPad and Android markets. .Apress owns United States Trademark Registration No. 3928078 for the mark APRESS, and has been using the mark in association with its goods and services since 1998. Apress, and its parent Springer Science+Business Media, have spent considerable sums of money and effort developing and protecting its valuable rights in its "APRESS" trademark.

Our client recently learned that you have filed an application for the mark APP PRESS covering "computer hardware and computer software programs for the integration of text, audio, graphics, still images and moving pictures into an interactive delivery for multimedia applications" and "application service provider, namely, hosting, managing, developing, and maintaining applications, software, and web sites, in the fields of personal productivity, wireless communication, mobile information access, and remote data management for wireless delivery of content to handheld computers, laptops and mobile electronic devices; computer services, namely, providing a web-based system and online portal for customers to remotely manage, administer, modify and control their end user computer devices, data and software applications." We understand that the application has recently registered.  It also appears that your company owns the domain name <myappress.com> and provides its services from this site to designers and developers, the very customers for our client's goods and services.

Your motives in registering and using the trademark and trade name APP PRESS beginning in November 2010, more than 12 years after Apress began to use its service mark and trade name APRESS and thereafter established itself as the leader in the market, are suspect.  The mark is confusingly similar to our client's mark, as the only difference is the addition of two letter "p's" in the middle of the mark.  The difference is even less stark with the domain name, in which only

WILMERHALE

App Press LLC
August 15, 2011
Page 2

one additional "p" if found.  We are concerned that your prominent use of "APP PRESS" in your name, as a trademark, in your domain name and on the website, and possibly in printed materials and elsewhere, will likely cause confusion with our client's long-standing and prior use of "APRESS."  We assume that you are familiar with our client and its longstanding rights in the "APRESS" mark, from its fame with programmers , software developers, and IT professionals, who are the customers you target.  People encountering your company name, and your URL, may believe that your company is a subsidiary, division, or other corporate branch of Apress or is otherwise associated with or endorsed by Apress.  The fact that your URL adds the generic term "my" to a term that is confusingly similar to our client's federally registered trademark does not avoid confusion.

It appears that your company is attempting to capitalize on the strong brand recognition and market leadership that our client has developed in the name and mark "APRESS," and is seeking to benefit from that good will.  Your use of the corporate name and trade name "App Press", the trademark APP PRESS and the registration and use of the domain name <myapress.com> constitute, among other things, trademark infringement, unfair competition, cyberpiracy and dilution in violation of Sections 32(1), and 43(a), (c) and (d) of the Lanham Act and subject your company to liability for actual or statutory damages, disgorgement of any profits it may receive from operating the website, as well as costs, attorney fees and punitive damages.

In an effort to resolve this matter quickly and amicably, please provide us (by return facsimile to the above number) with your written assurance that you will immediately plan to abandon all use of the APP PRESS trademark, trade name and domain name.  If we have your assurances that you will plan to do so, our client would be willing to consider a reasonable phase-out period for the transition.

We expect your response within 10 days of your receipt of this letter.  If we receive no reply, we will assume you are not willing to resolve this matter amicably.

Nothing herein is intended by us, nor should it be construed by you, as a waiver or relinquishment of any rights or remedies which our client may have in this matter, and all such rights and remedies are hereby specifically reserved.

ACTIVEUS 90331001v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| APP PRESS LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | CASE NO. 1:12-cv-0718-SEB-DML |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| APRESS MEDIA LLC, | ) | |
| | ) | |
| Defendant/ Counterclaim Plaintiff. | ) | |

**Notice of Manual Filing**

Please take notice that Plaintiff/Counterclaim Defendant, App Press LLC has manually filed the following:

Exhibit B to Affidavit of Attorney Jacob R. Cox (Exhibit 5 to App Press's Brief in Support of Motion for Summary Judgment Against Apress Media's Counterclaims):

> September 12, 2011 Voicemail from Attorney Barbara Barakat to Attorney Jacob R. Cox

This exhibit has not been filed electronically because it is a file that cannot be electronically converted to PDF format.

The document or object has been manually served on all parties.

/s *Jacob R. Cox*
Jacob R. Cox, Attorney No. 26321-49

**COX LAW OFFICE**
1606 N. Delaware Street
Indianapolis, Indiana 46202
T: 317.884.8550
F: 317.660.2453
jcox@coxlaw.org
*Attorney for Plaintiff/Counterclaim Defendant*
*App Press LLC*

**From:** jcox@coxlaw.org [mailto:jcox@coxlaw.org]
**Sent:** Monday, September 19, 2011 4:02 PM
**To:** Barakat, Barbara
**Subject:** Apress Media

Barbara,

I am writing in regards to the cease and desist letter sent by your client, Apress Media LLC, to my client, App Press, LLC.  During our conversation last week, you requested that my client provide a brief description of the product that App Press offers.  My client has provided me with the following description of the App Press CMS Tool to provide to your client:

App Press is a web-based content management system/platform that allows visual designers to build iPad and iPhone apps, code-free. A user in the system uploads custom images then arranges each element in App Press. During development they can view their work via the App Press Previewer app, available in the App Store.

Further information about the App Press CMS Tool can be found on the App Press website or the numerous articles published regarding the App Press tool and its use by visual designers to create Apps.

As we discussed last week, my client does not believe that its company name infringes on the mark "Apress" held by your client.  Infringement does not occur unless a mark utilized by one party creates the likelihood of confusion in typical purchasers as to the source of that product.  Here, no such confusion exists.  The two company names are distinct in several manners, including the fact that they are visually different (one word versus two), are associated with the sale of entirely different products (books versus a software program that allows purchasers to manage and arrange content in apps published on the Apple Market for iPads and iPhones), and in fact are not even pronounced similarly.  Simply put, my client's company name consists of two distinct and recognizable words that have meaning in their own right, and even were a purchaser to believe that Apress's name was actually two words, we see no basis for a claim that the words "A" and "App" are so similar as to cause confusion.

Additionally, it is worth noting that we are aware of no actual confusion in consumers between the company names, and you have not indicated the existence of any such confusion.  In fact, we do not believe that the degree of caution utilized by a purchaser wishing to purchase either a book or a software program allowing for the creation of Apps would confuse one company's product for the other.

You indicated last week that the above information would allow you to discuss this matter with your client.  Once you have done so, please confirm to me that this issue has been resolved.

I will look forward to your response.

Thanks,

Jake Cox

Jacob R. Cox
COX LAW OFFICE
1606 N. Delaware Street
Indianapolis, Indiana 46202
T. 317.884.8550
F. 317.660.2453
jcox@coxlaw.org

**Jacob Cox**

| | |
|---|---|
| **From:** | Barakat, Barbara [Barbara.Barakat@wilmerhale.com] |
| **Sent:** | Tuesday, May 08, 2012 3:45 PM |
| **To:** | jcox@coxlaw.org |
| **Cc:** | Bevilacqua, Michael |
| **Subject:** | RE: Apress Media |

Jake:

We have discussed your client's mark and its goods and services with our client after the discussion we had and the receipt of your letter below.

First of all, we disagree with your assessment that the trademarks are distinct. Our client's "APRESS" and your client's "APP PRESS" are essentially identical, in pronunciation, connotation and commercial impression. The fact that your client's mark is 2 words is irrelevant from a trademark standpoint because when the marks are pronounced in the normal course of conversation, they are likely to sound the same. The term "app" may have meaning in today's language, but its meaning is pertinent to our client's goods and services as well. With respect to the term "PRESS," a publisher is often referred to as a "Press," as in printing press, so the connotation of your client's mark will be confusing to consumers, as they already know Apress Media as such a publisher. Given all of these similarities, your client's reasons for selecting this confusingly similar mark are highly suspect.

In your letter, you distinguish your client's goods and services by stating that our client provides only books. Apress, however, provides far more than books. Our client also takes content of third parties and publishes that content electronically. Its works are well known too in Apple stores and at the App Store. In fact, of the 250 works Apress Media published in the last 2 years, 130 of them have been sold through the Apple iStore.

You stated that your client is providing a software program that allows purchasers to manage and arrange content in "apps published on the Apple Market for iPads and iPhones." Your client's registration, however, covers "computer hardware and computer software programs for the integration of text, audio, graphics, still images and moving pictures into an interactive delivery for multimedia applications" and "application service provider, namely, hosting, managing, developing, and maintaining applications, software, and web sites, in the fields of personal productivity, wireless communication, mobile information access, and remote data management for wireless delivery of content to handheld computers, laptops and mobile electronic devices; computer services, namely, providing a web-based system and online portal for customers to remotely manage, administer, modify and control their end user computer devices, data and software applications." Nonetheless, we are aware that your client publishes other parties' material and that its hosted service publishes the content these parties create, which could be in the form of books, to both the Apple market, and other vendors, such as for Google and Kindle products. In that sense, App Press is a publisher.

Even more problematic is the fact that for these services, although App Press acts as a publisher, it does not perform any quality control over the finished product. This is a particular concern for Apress if products of low quality are published by your client and that low quality is attributed to our client when confusion occurs.

The consumer for the services provided by Apress Media and the consumer for the goods and services of your client are in most cases identical. In both cases, the target audience for the goods and services are developers. Moreover, the fact that your client can publish books and apps that are in any subject area does not mean that confusion is not likely when our client's goods and services are limited to technical and scientific areas.

In fact, Apress Media has determined that parties have experienced confusion to date. Apress Media's systems have detected that over a thousand users have come to our client's website and performed a search to locate "APP PRESS" since your client's products have existed. This actual confusion makes it clear that the two marks cannot coexist. For these reasons, Apress Media has asked us to contact you again to determine if your client is willing to cancel its

registration.  Please respond by May 25, 2012.  If we receive no reply, we will assume you are not willing to resolve this matter amicably.

Nothing herein is intended by us, nor should it be construed by you, as a waiver or relinquishment of any rights or remedies which our client may have in this matter, and all such rights and remedies are hereby specifically reserved.

Barbara

Barbara A. Barakat
WilmerHale
60 State Street
Boston, MA 02109 USA
617-526-6154 (t)
617-526-5000 (f)
barbara.barakat@wilmerhale.com

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an email to postmaster@wilmerhale.com -- and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** jcox@coxlaw.org [mailto:jcox@coxlaw.org]
**Sent:** Monday, September 19, 2011 4:02 PM
**To:** Barakat, Barbara
**Subject:** Apress Media

Barbara,

I am writing in regards to the cease and desist letter sent by your client, Apress Media LLC, to my client, App Press, LLC.  During our conversation last week, you requested that my client provide a brief description of the product that App Press offers.  My client has provided me with the following description of the App Press CMS Tool to provide to your client:

App Press is a web-based content management system/platform that allows visual designers to build iPad and iPhone apps, code-free. A user in the system uploads custom images then arranges each element in App Press. During development they can view their work via the App Press Previewer app, available in the App Store.

Further information about the App Press CMS Tool can be found on the App Press website or the numerous articles published regarding the App Press tool and its use by visual designers to create Apps.

As we discussed last week, my client does not believe that its company name infringes on the mark "Apress" held by your client.  Infringement does not occur unless a mark utilized by one party creates the likelihood of confusion in typical purchasers as to the source of that product.  Here, no such confusion exists.  The two company names are distinct in several manners, including the fact that they are visually different (one word versus two), are associated with the sale of entirely different products (books versus a software program that allows purchasers to manage and arrange content in apps published on the Apple Market for iPads and iPhones), and in fact are not even

pronounced similarly.  Simply put, my client's company name consists of two distinct and recognizable words that have meaning in their own right, and even were a purchaser to believe that Apress's name was actually two words, we see no basis for a claim that the words "A" and "App" are so similar as to cause confusion.

Additionally, it is worth noting that we are aware of no actual confusion in consumers between the company names, and you have not indicated the existence of any such confusion.  In fact, we do not believe that the degree of caution utilized by a purchaser wishing to purchase either a book or a software program allowing for the creation of Apps would confuse one company's product for the other.

You indicated last week that the above information would allow you to discuss this matter with your client.  Once you have done so, please confirm to me that this issue has been resolved.

I will look forward to your response.

Thanks,

Jake Cox

Jacob R. Cox
COX LAW OFFICE
1606 N. Delaware Street
Indianapolis, Indiana 46202
T. 317.884.8550
F. 317.660.2453
jcox@coxlaw.org



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Oct 22 03:10:34 EDT 2013*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: ____ OR Jump to record: ____  **Record 1 out of 2**

TSDR  ASSIGN Status  TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*

# APRESS

**Word Mark** APRESS

**Goods and Services** IC 009. US 021 023 026 036 038. G & S: Downloadable electronic publications in the nature of books featuring computer, science, and technology subject matter, and multimedia publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, digital animation, and computer-aided animation, sound, graphics, presentations and illustrations; downloadable electronic publications in the nature of books featuring computer, science, and technology subject matter, and multimedia publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, and computer-aided animation, sound, graphics, presentations, and illustrations for use in professional development by information technology professionals; electronic books recorded on computer media featuring computer, science, and technology subject matter, and multimedia publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, digital animation, and computer-aided animation, sound, graphics, presentations, and illustrations; electronic books recorded on computer media featuring computer, science, and technology subject matter, and multimedia publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, digital animation, and computer-aided animation, sound, graphics, presentations, and illustrations for use in professional development by information technology professionals; CD-ROMs, DVDs, electronic memories, and magnetic data carriers, containing text and graphic works of others, featuring topics on computer, science, and technology, and multimedia publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, digital animation, and computer-aided animation, sound, graphics, presentations, and illustrations. CD-ROMs, DVDs, electronic memories, and magnetic data carriers, containing text and graphic works of others, featuring topics on computer, science, and technology, and multimedia

publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, digital animation, and computer-aided animation, sound, graphics, presentations, and illustrations, for use in professional development by information technology professionals. FIRST USE: 20011200. FIRST USE IN COMMERCE: 20011200

IC 016. US 002 005 022 023 029 037 038 050. G & S: A series of books featuring computer, science, and technology subject matter, and multimedia publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, digital animation, and computer-aided animation, sound, graphics, presentations, and illustrations; A series of books featuring computer, science, and technology subject matter, and multimedia publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, digital animation, and computer-aided animation, sound, graphics, presentations, and illustrations, for use in professional development by information technology professionals. FIRST USE: 20011200. FIRST USE IN COMMERCE: 20011200

IC 041. US 100 101 107. G & S: Book publishing; e-book publishing; publishing of electronic publications; online electronic publishing of books; online books in the fields of computer, science, and technology, and on multimedia publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, digital animation, and computer-aided animation, sound, graphics, presentations, and illustrations; online books in the fields of computer, science, and technology, and on multimedia publishing topics, namely, computer-aided graphics, graphics design, web design and development, digital imaging, digital video, computer animation, digital animation, and computer-aided animation, sound, graphics, presentations, and illustrations for use in professional development by information technology professionals. FIRST USE: 19980301. FIRST USE IN COMMERCE: 19980301

| **Standard Characters Claimed** | |
| --- | --- |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 85033110 |
| **Filing Date** | May 7, 2010 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 21, 2010 |
| **Registration Number** | 3928078 |
| **Registration Date** | March 8, 2011 |
| **Owner** | (REGISTRANT) Apress Media, LLC LIMITED LIABILITY COMPANY CALIFORNIA 233 Spring Street New York NEW YORK 10013 |
| **Attorney of Record** | Michael J. Bevilacqua, Esquire |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
|---|---|---|---|---|---|---|---|---|---|
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC | | | | | |

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



# United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Oct 22 03:10:34 EDT 2013*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**Logout** Please logout when you are done to release system resources allocated for you.

**Start** List At: [          ] OR **Jump** to record: [          ]    **Record 27 out of 45**

---

**TSDR** | **ASSIGN Status** | **TTAB Status**    *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | BOOKS **FOR PROFESSIONALS BY PROFESSIONALS** |
| **Goods and Services** | IC 041. US 100 101 107. G & S: BOOK PUBLISHING SERVICES IN PRINT AND ELECTRONIC FORM. FIRST USE: 20001002. FIRST USE IN COMMERCE: 20001002 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75574011 |
| **Filing Date** | October 20, 1998 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | August 8, 2000 |
| **Registration Number** | 2491114 |
| **Registration Date** | September 18, 2001 |
| **Owner** | (REGISTRANT) CPRESS Management Corporation CORPORATION CALIFORNIA 901 Grayson Street, Suite 204 Berkeley CALIFORNIA 94710 |
| | (LAST LISTED OWNER) APRESS MEDIA, LLC LIMITED LIABILITY COMPANY CALIFORNIA 233 SPRING STREET NEW YORK NEW YORK 10013 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Michael J. Bevilacqua, Esquire |
| **Type of Mark** | SERVICE MARK |

| | |
|---|---|
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20120228. |
| **Renewal** | 1ST RENEWAL 20120228 |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP   PREV LIST   CURR LIST

NEXT LIST   FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Oct 22 03:10:34 EDT 2013*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**Logout**  Please logout when you are done to release system resources allocated for you.

**Start**  List At: [          ]  OR  **Jump**  to record: [          ]    **Record 1 out of 2**

---

**TSDR**    **ASSIGN Status**    **TTAB Status**    *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | THE EXPERT'S VOICE |
| **Goods and Services** | IC 016. US 002 005 022 023 029 037 038 050. G & S: Series of educational books on information technology. FIRST USE: 20011001. FIRST USE IN COMMERCE: 20011001 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76260960 |
| **Filing Date** | May 21, 2001 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | October 16, 2001 |
| **Registration Number** | 2613499 |
| **Registration Date** | August 27, 2002 |
| **Owner** | (REGISTRANT) CPRESS Management Corporation CORPORATION CALIFORNIA 2855 Telegraph Avenue Suite 600 Berkeley CALIFORNIA 94705 |
| | (LAST LISTED OWNER) APRESS MEDIA, LLC LIMITED LIABILITY COMPANY CALIFORNIA 233 SPRING STREET NEW YORK NEW YORK 10013 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Michael J. Bevilacqua, Esquire |

| | |
|---|---|
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20120723. |
| **Renewal** | 1ST RENEWAL 20120723 |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP   PREV LIST   CURR LIST   NEXT LIST   FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Oct 22 03:10:34 EDT 2013*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

**Logout** Please logout when you are done to release system resources allocated for you.

**Start** List At: [_____] OR **Jump** to record: [_____] **Record 2 out of 11**

---

**TSDR** | **ASSIGN Status** | **TTAB Status**   *( Use the "Back" button of the Internet Browser to return to TESS)*

---

# THE AUTHOR'S PRESS

| | |
|---|---|
| **Word Mark** | THE AUTHOR'S PRESS |
| **Goods and Services** | (CANCELLED) IC 041. US 100 101 107. G & S: Print and electronic publishing services, namely publication of text and graphic works of others on cd-roms featuring computer, science, technology, multimedia and professional development topics, all directed to information technology professionals. FIRST USE: 20000922. FIRST USE IN COMMERCE: 20000922 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78748873 |
| **Filing Date** | November 7, 2005 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | July 18, 2006 |
| **Registration** | |

| | |
|---|---|
| **Number** | 3153909 |
| **Registration Date** | October 10, 2006 |
| **Owner** | (REGISTRANT) **Apress**, L.P. CPress Management Corp., a California corporation, general partner, Gary Cornell, a United States citizen, Dan Appleman,a United States citizen. LIMITED PARTNERSHIP CALIFORNIA 2560 Ninth Street, Suite 219 Berkeley CALIFORNIA 94710 |
| | (LAST LISTED OWNER) **APRESS MEDIA**, LLC LIMITED LIABILITY COMPANY CALIFORNIA 233 SPRING STREET NEW YORK NEW YORK 10013 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Michael J. Bevilacqua, Esquire |
| **Prior Registrations** | 2476776 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PRESS" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL-2(F) |
| **Live/Dead Indicator** | DEAD |
| **Cancellation Date** | May 17, 2013 |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST
NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY