1                        UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF INDIANA
2                            INDIANAPOLIS DIVISION

3   APP PRESS LLC,                        )
                                          )
4       Plaintiff and                     )
          Counterclaim-Defendant,         )
5                                         )
              -vs-                        )  CAUSE NO.
6                                         )  1:12-CV-718-SEB-DML
    APRESS MEDIA LLC,                      )
7                                         )
        Defendant and                     )
8         Counterclaim-Plaintiff,         )

9

10

11                     DEPOSITION OF GRANT GLAS

12

13

14                     ATTORNEYS' EYES ONLY

15

16

17            The videotaped Rule 30(b)(6) deposition
    upon oral examination of GRANT GLAS for the
18  Plaintiff and Counterclaim-Defendant, a witness
    produced and sworn before me, Tara Gandel Hudson,
19  RPR, CRR, a Notary Public in and for the County of
    Marion, State of Indiana, taken on behalf of the
20  Defendant and Counterclaim-Plaintiff at the COX LAW
    OFFICE, 1606 North Delaware Street, Indianapolis,
21  Marion County, Indiana, on the 10th day of October,
    2013, commencing at the hour of 9:02 a.m., pursuant
22  to the Federal Rules of Civil Procedure with
    written notice as to the time and place thereof
23  having been given.

24  Connor Reporting
    1650 One American Square
25  Indianapolis, IN  46282
    317/236-6022

```
  1                    A P P E A R A N C E S

  2      FOR THE PLAINTIFF and COUNTERCLAIM-DEFENDANT:
         App Press LLC
  3
                  Jacob R. Cox
  4               COX LAW OFFICE
                  1606 North Delaware Street
  5               Indianapolis, IN  46202
                  317-884-8550
  6               jcox@coxlaw.org

  7
         FOR THE DEFENDANT and COUNTERCLAIM-PLAINTIFF:
  8      Apress Media LLC

  9               Mark G. Matuschak
                  Martin E. Gilmore
 10               WILMER CUTLER PICKERING HALE & DORR LLP
                  7 World Trade Center
 11               250 Greenwich Street
                  New York, NY  10007
 12               212-937-7226
                  mark.matuschak@wilmerhale.com
 13               martin.gilmore@wilmerhale.com

 14
         ALSO PRESENT:
 15
                  Joannie Geuder, Videographer
 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

**Grant Glas**                                                                                    10/10/2013

| | | |
|---|---|---|
| 1 | A | Oh, okay. |
| 2 | | (A discussion was held off the record.) |
| 3 | | (Deposition Exhibit 20 was marked for |
| 4 | | identification.) |
| 5 | Q | So, Mr. Glas -- |
| 6 | A | Mm-hmm. |
| 7 | Q | -- showing you what's been marked as Exhibit 20, |
| 8 | | and that's the App Press profit and loss |
| 9 | | statement from January 1 to October 7th, 2013; |
| 10 | | correct? |
| 11 | A | Yes. |
| 12 | Q | And that shows that on a year-to-date basis, |
| 13 | | you're ███████████████████████ as far as net |
| 14 | | income is concerned; correct? |
| 15 | A | Yes. |
| 16 | Q | Okay.  And why is it that you were ███████ |
| 17 | | ████████████████████████████████████ |
| 18 | A | ████████████████████████████████████████ |
| 19 | | ███████████ |
| 20 | Q | You were in litigation at this point last year; |
| 21 | | correct? |
| 22 | A | We were in a certain point in litigation but not |
| 23 | | this point in litigation. |
| 24 | Q | All right.  Now -- and you didn't anticipate |
| 25 | | back in November -- October or November 2012 |

**Grant Glas**                                                                 10/10/2013

| | | |
|---|---|---|
| 1 | | to September or -- I might have given it in |
| 2 | | October but, regardless, that was the -- that |
| 3 | | was the time frame. |
| 4 | Q | All right.  So last September or October you |
| 5 | | projected by this time of the year to have ▓▓▓ |
| 6 | | users; correct? |
| 7 | A | That is correct. |
| 8 | Q | ▓▓▓▓▓▓▓▓▓▓ |
| 9 | A | ▓▓▓▓▓▓▓▓▓▓ |
| 10 | Q | And you projected profit of -- you predicted |
| 11 | | revenue of ▓▓▓▓ correct? |
| 12 | A | That is correct. |
| 13 | Q | ▓▓▓▓▓▓▓▓▓▓▓▓ |
| 14 | | ▓▓▓▓▓ |
| 15 | A | ▓▓ |
| 16 | Q | So putting aside ▓▓▓▓▓▓▓▓▓ |
| 17 | | ▓▓▓▓▓▓ just on a revenue basis, you |
| 18 | | have ▓▓▓▓▓▓▓▓ |
| 19 | | projected a year ago? |
| 20 | A | ▓▓ |
| 21 | Q | Okay.  One other question on this document on |
| 22 | | the last page, 2376. |
| 23 | A | Okay. |
| 24 | Q | Your Twitter handle there is gglasdesign. |
| 25 | A | Yes. |

Grant Glas                                                                10/10/2013

```
1    Q    -- am I correct then that the number of lines of

2         code that actually would have to be rewritten is

3         in the ▓▓▓▓▓▓▓ not the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓?

4    A    Yeah, that's correct.  But where that code

5         exists -- I don't want this to be misconstrued

6         as something that's easy.

7              Where that code exists being rewritten

8         takes a significant amount of work and time.  So

9         if you're trying to break this down as something

10        where, oh, it's just rewriting a couple lines of

11        code, it is not that easy, and that's not how

12        programming works.

13   Q    All right.  Just so we're clear, my question

14        wasn't how easy or difficult it was.  I'm just

15        trying to get a sense of the numbers since you

16        used the numbers in your interrogatory answer.

17             All right.  Just to clarify your other

18        answer, of the various consultants that you

19        used --

20   A    Mm-hmm.

21   Q    -- you identified Hanapin and KA+A.  Were those

22        ones that you used before or after August 15th

23        of 2011?

24   A    So the first cease and desist letter?

25   Q    Yeah.
```

```
 1    A    After.

 2    Q    Okay.  So the MightyDeals website paid

 3         advertising was before August 15th, 2011?

 4    A    It was after.

 5    Q    The Smashing Magazine paid advertising, before

 6         or after?

 7    A    I believe it was after as well.

 8    Q    Miles Design, before or after?

 9    A    After.

10    Q    All right.

11              THE VIDEOGRAPHER:  Is this a good time for

12         a tape change?

13              MR. MATUSCHAK:  Yeah, sure.

14              THE VIDEOGRAPHER:  We're off the record.

15         The time is 4:09.

16              (A recess was taken.)

17              THE VIDEOGRAPHER:  This begins Tape No. 5.

18         We're back on the record.  The time is 4:20.

19              MR. MATUSCHAK:  Let's mark this as the next

20         exhibit, please.

21              (Deposition Exhibit 24 was marked for

22         identification.)

23    Q    Mr. Glas, showing you what's been marked as

24         Exhibit 24.  It's a copy of App Press's answers

25         and objections to Apress Media's third set of
```

Grant Glas                                                              10/10/2013

```
 1    Q   My question was, as of August 15, 2011, when you

 2        received that cease and desist letter, you made

 3        the choice not to change your name; correct?

 4    A   Correct.

 5    Q   My client did not make that choice for you; did

 6        they?

 7    A   What choice?

 8    Q   That you wouldn't change your name.  That was a

 9        choice you made.  That wasn't a choice that my

10        client made.

11    A   Your client sent a cease and desist letter to

12        us.

13    Q   And you decided to go forward with your business

14        notwithstanding that in the same fashion;

15        correct?

16    A   Yes.

17    Q   Okay.  Now, after that sentence we were just

18        talking about, the next sentence says "Apress

19        Media also misrepresented and/or concealed facts

20        with a fraudulent intent despite Apress Media's

21        knowledge of the true facts."  Do you see that?

22    A   I do.

23    Q   What facts did Apress Media fraudulently intend

24        to conceal?

25    A   I believe we covered some of these points.  The
```

Grant Glas                                                                10/10/2013

```
1      to you is, would you be willing to accept a

2      judgment of no infringement and be done with

3      this whole case?

4   A  Yes.

5   Q  And isn't it your understanding that if Apress

6      Media did not wish to pursue litigation, that in

7      fact they could have simply not responded to the

8      complaint and nobody would have had to go any

9      further?

10  A  Correct.

11  Q  And you, in fact, would have had a default

12     judgment and there wouldn't be any worry about

13     infringement in the future?

14  A  Correct.

15  Q  Do you think it's reasonable for someone to

16     threaten litigation but not actually file

17     litigation for more than a year?

18         MR. MATUSCHAK:  Object to the form.

19  A  No.  That is not reasonable.  In my opinion.

20  Q  Did you think it was reasonable that Apress

21     Media did not respond in any manner to the

22     response to their cease and desist letter in

23     August and September of 2011, and then eight

24     months later sent you another cease and desist?

25  A  Yeah.
```

Connor+Associates                317-236-6022                          Page: 406

```
1               MR. MATUSCHAK:  Object to the form.

2    A    That was unreasonable.

3    Q    And do you think that that type of delay should

4         be punished by a waiver of your right to

5         actually go forward with those claims?

6               MR. MATUSCHAK:  Object to the form.

7    A    Yes.

8    Q    And so when Mr. Matuschak kept questioning you

9         over and over about good cause and the different

10        estoppel and waiver and laches and all the

11        different legal terms that he was using, I think

12        it was a little bit muddled.  The reason why it

13        sounds like you're saying that they should have

14        to waive the claims is because they sat on their

15        hands and didn't do anything; is that correct?

16   A    Yes.

17              MR. MATUSCHAK:  Object to the form.

18   Q    And you, during that time, developed your

19        company, developed the brand name, developed

20        goodwill, and went much further down the road in

21        becoming a successful company when they could

22        have actually done something way before; is that

23        correct?

24              MR. MATUSCHAK:  Object --

25   A    Correct.
```