UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| APP PRESS LLC, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | CASE NO. 1:12-cv-0718-SEB-DML |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| APRESS MEDIA LLC, ) | |
| ) | |
| Defendant/ Counterclaim Plaintiff. ) | |

**BRIEF IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF JOHN RODZVILLA**

**I.      INTRODUCTION**

Apress Media has identified John Rodzvilla ("Mr. Rodzvilla") to testify as an expert witness in this matter.  However, review of Mr. Rodzvilla's expert report and subsequent deposition demonstrates that Mr. Rodzvilla's testimony is neither reliable nor relevant and should be excluded from use at trial.  Specifically, Mr. Rodzvilla's report contains a number of opinions that, upon being deposed, Mr. Rodzvilla admitted were simply wrong and, as used by Apress Media in its briefing for dispositive motions, were also inaccurate statements of Mr. Rodzvilla's opinions.  Additionally, a number of the opinions set forth by Mr. Rodzvilla are so lacking in logic that they should be ignored by the Court.

For example, in addition to claiming that Apress Media, a book publisher, competes with App Press, a software company, Mr. Rodzvilla also claims that Apress Media also competes with (i) every investment bank and investment service provider in the nation due to the fact that Apress Media publishes a book on investing, (ii) every university that provide classes on business journalism throughout the world due to the fact that Apress Media publishes a book on investing, and (iii) also Microsoft Word and similar software programs (as direct competitora of

1

Apress Media) because Word as a software program is able to create documents that can be shared publicly on the internet.

These opinions demonstrate a lack of logic and complete lack of understanding of what it is to "compete" for purposes of trademark litigation. Further, the opinions of Apress Media's fail to demonstrate the reliability and relevance that are require of expert witnesses in this circuit, and should accordingly be denied. Accordingly, Apress Media's expert report should be excluded and their request to allow their expert to testify should be denied.

## II.     LEGAL STANDARD

The court serves as gatekeeper to bar expert testimony that is not sufficiently reliable or relevant to issues in the case, or testimony offered by a person not sufficiently expert in the field of study that his testimony concerns. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993). Determining whether expert testimony is sufficiently reliable for a jury to consider requires a flexible approach, and courts have "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier,* 576 F.3d 726, 737 (7th Cir.2009) (internal citations omitted) (emphasis in original).

In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149-50 (1999), the Court held that the basic gatekeeping function described in *Daubert* applies to all expert testimony, not just "scientific" testimony. But the Court added that in cases not involving scientific testimony, " '[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.' " *Id.* at 150 (citation omitted). In such cases, the Court said, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.*

"As gate-keeper, the Court must first determine whether an expert's proffered testimony rests on a reliable foundation--that is, whether his testimony is "more than subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590. Expert testimony should be excluded "if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith ...." *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir. 1996) (internal marks omitted).

Further, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997). As the Seventh Circuit has described, " [a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert* ." *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir.2009) (internal quotations and citations omitted).

The second gate-keeping function of the Court is to determine whether the expert's proffered testimony is relevant and will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. It must not only have a reliable foundation but also be relevant in that it "fits" the facts of this case. *Daubert,* 509 U.S. at 591-592.

### III. ARGUMENT

    **A. Mr. Rodzvilla has admitted that his opinion that App Press is a "publisher" is simply wrong.**

One of the main opinions in Mr. Rodzvilla's report is that App Press is a "publisher" of apps and that being a publisher is evidence that App Press competes with Apress Media, who is also a "publisher." (See, e.g., Rodzvilla Report at ¶ 44, attached hereto as Exh. 1. ("App Press is an app publisher"), ¶ 47 ("App Press's confidential internal documents confirm it considers itself to be a publisher"), and ¶51 ("App Press (as a publisher of apps including book apps) competes with Apress (a publisher of electronic books, including interactive e-books).) This issue is not only disputed, but key to whether likelihood of confusion exists and/or Apress Media can prevail on its claims. In fact, Apress Media even highlighted this issue in their arguments against summary judgment, opining that "[c]ontrary to App Press's attorney argument (sic), App Press is in fact, a publisher. John Rodzvilla, the Senior Electronic-Publisher-in-Residence at Emerson College, definitively concludes that Apress (sic)[1] is a publisher in his accompanying declaration and expert report." (Apress Media's Response to MSJ p. 11.)

However, despite claiming that App Press is a "publisher" in his expert report, during his deposition, Mr. Rodzvilla admitted that the numerous claims that App Press is a "publisher" are simply not true. Instead, Mr. Rodzvilla explicitly stated that a tool (such as App Press's CMS Tool) that is used to create an electronic or digital form of a book or other content is just that, a tool; the maker of such a tool is NOT considered the publisher of the end product even where the publishing tool is utilized in its creation. (Rodzvilla Dep. 65:21-66:2, attached hereto as Exh. 2.) He further clarified this issue specifically in relation to App Press by stating flat out that App Press is not a publisher of apps created using the App Press CMS Tool:

> Attorney Cox: So didn't you previously state that App Press is in fact not a publisher of the apps that are created using the App Press CMS Tool?
>
> Attorney Tompros: Same objections.

---

[1] This reference appears to be App Press, but Apress's counsel instead typed their own client's name rather than App Press.

4

>Mr. Rodzvilla: I believe I said that App Press is a publishing tool that these authors can use to publish their own – their content, their app. That was the question, right?
>
>Attorney Cox: No, that doesn't answer the question.
>
>Mr. Rodzvilla: I mean –
>
>Attorney Cox: So is App Press the publisher, then, of that app? Or is the person who has the content and creates the app the publisher? Just as we also discussed about Adobe and Indesign.
>
>Mr. Rodzvilla: **App Press is not the publisher.**
>
>Attorney Cox: Okay. So to clarify, when this [Rodzvilla's Expert Report] says that App Press is a publisher or that they believe themselves to be a publisher, that's not your opinion; you don't believe that App Press is actually a publisher of apps that are created using the CMS Tool, correct?
>
>Mr. Rodzvilla: I would have to say I'm – again, the same --- it's same question about Apress. I am not, you know, inside enough and familiar enough with everything that goes along to say this is what they think they are, this is what they say they are. In this case, I am just going by the language that was presented to me –
>
>Attorney Cox: I'm just asking your opinion is whether they are a publisher, and you're saying that they're not, correct?
>
>Mr. Rodzvilla: Okay. I'm saying – yes, I am saying that they are part of the publishing process. **They are not a publisher.**
>
>(Rodzvilla Dep. 213:6-214:12 (emphasis added).)

There is not much to say in addition to the above; Mr. Rodzvilla himself has admitted that App Press is not a publisher despite his prior report to the contrary and the volume of rhetoric filed on this issue by Apress Media. However, even Apress Media's expert agrees that App Press is not a publisher, and no evidence has been provided to support the contrary. App Press is not the "publisher" of apps created using the App Press CMS Tool.

**B. Mr. Rodzvilla has admitted that his opinion that Apress Media and App Press compete for purchasers of e-books and apps is wrong.**

5

Even more confusing than Mr. Rodzvilla's inaccurate position in his report that App Press is a publisher, is his claim that App Press and Apress Media compete for purchasers of e-books and apps. Simply put, his deposition testimony demonstrates that a purchaser of an app built using the App Press CMS Tool does not compete with an e-book published by Apress Media:

> Attorney Cox: So, to your knowledge, though, of the apps that you know were created using the App Press CMS tool and the Apress Media books with which you're familiar, your position is that those apps and e-books do not compete with each other; is that correct?
>
> Mr. Rodzvilla: They don't compete with each other for -- let me think this through. They don't compete with each other.

(Rodzvilla Dep. 184:12-18)

Mr. Rodzvilla then reiterated this opinion again for the sake clarity:

> Attorney Cox: So you -- your opinion is that Apress Media is not competing to sell its e-books to a consumer with any of the companies who have created an app with the App Press CMS Tool that's currently out on the app market?
>
> Mr. Rodzvilla: Apress is not competing with the companies who have created apps through-- well, right now, from my knowledge, they're not.

(Rodzvilla Dep. 184:20-185:3)

Thus, Mr. Rodzvilla's opinion that Apress Media and App Press compete for purchasers of apps and e-books should be excluded, as it is without base and contrary to Mr. Rodzvilla's own opinion. Any position to the contrary is taken by Apress Media in conflict with their own expert.

### C.  App Press's Own Expert Cannot provide evidence to support that Apress Media and App Press compete for authors seeking to publish their content in an electronic form

6

Mr. Rodzvilla's statement that Apress Media and App Press compete with each other to provide services to individuals who want to create apps is based entirely on his "feeling" that the App Press and Apress Media represent "two paths that someone can decide (sic)." (Rodzvilla Dep. 154:14-15.) Mr. Rodzvilla admitted that he has not done any surveys of consumers to determine whether they considered Apress Media's books and App Press's products/services to be such opposing options or otherwise in competition with each other. (Rodzvilla Dep. 154:20-155:8.)

Mr. Rodzvilla further admitted that he did not review any statistics or other information or documents relating to this issue as to whether apps and e-books compete. (Rodzvilla Dep. 155:9-12.) Instead, Mr. Rodzvilla's opinion is based entirely on a "feeling" of his that the two companies compete, and he evidently "feels" no need to justify this position with empirical data of any sort. Such speculation is not reliable, not relevant, would mislead and confuse the jury, and should thus be excluded by the Court.

### D. The opinion that "[m]any of the apps that App Press publishes can be considered book apps" should be excluded.

Mr. Rodzvilla testified that "many" of the apps published using the App Press CMS tool are "book apps," but has shown no basis for his testimony that apps published using the App Press CMS tool are "book apps." In addition to the fact that Mr. Rodzvilla has admitted that App Press is not the "publisher" of apps created with App Press CMS tool, and thus App Press does not "publish" those apps, this opinion should also be excluded because Mr. Rodzvilla has admitted that he has not even downloaded or reviwed/used even a single app that has been made with the App Press CMS Tool. Thus, without even reviewing or using even one of the apps that he attempts to characterize, Mr. Rodzvilla has no basis for stating what type of apps, if any, the

apps created using the App Press CMS Tool may constitute, and his opinion on this issue should be excluded as not reliable, not relevant, and without basis.

### E. Mr. Rodzvilla's opinion that e-books and apps compete against each other should be excluded.

Mr. Rodzvilla claims that "it is well recognized within the publishing industry that e-books and apps compete with one another," and then again affirmatively states that "E-books compete with apps." (Rodzvilla Report ¶¶ 35, 36). However, Rodzvilla provides no support for these statement other than his own assertions. In fact, in response to questions on this subject, Mr. Rodzvilla admits that, despite his attempts, he did not have access to any research or industry information on this issue and relies on nothing more than his own opinion:

> Attorney Cox: Did you research or consider any market analysis documents that discussed the sales of e-books versus apps or whether the two have any connection at all in the marketplace?
>
> Attorney Tompros: Objection. Compound.
>
> Mr. Rodzvilla: I did do a search to try and find some numbers like that, and I could not find those numbers.
>
> (Rodzvilla Dep. (89:9-89:15)
>
> Attorney Cox: So you were unable to access any information directly from publishers regarding their sales of e-books, apps, or any other digital media; is that correct?
>
> Mr. Rodzvilla: Correct.
>
> (Rodzvilla Dep. 90:15-91:1)

Similarly, Mr. Rodzvilla admitted that his previous experience in the publishing industry did not include any conversations regarding the publication of content as e-books versus apps. (*Id.*) For example, Mr. Rodzvilla never conferred or negotiated with an author about the digital rights for a book to be obtained by his previous employer, Perseus, be it via publication as an app

8

or e-book. (Rodzvilla Dep. 32:22-33:6.) Similarly, Mr. Rodzvilla admitted that he did not know the method or work flow used by Apess Media in determining how to publish digital content, be it in the format of e-books or otherwise (Rodzvilla Dep. 39:10-40:9) Simply put, Mr. Rodzvilla has no expertise on how content is published in app or e-book format, by Apress Media or anyone else.

To further this issue, Mr. Rodzvilla does not know how many books Apress Media publishes, and also doesn't know how many interactive e-books they have. (Rodzvilla Dep. 129:12-130:2.) In fact, despite stating in his report that Apress Media HTML 5 Programming interactive e-book is similar in style and function to book apps, Mr. Rodzvilla admits that he has never even looked at the Apress Media's HTML 5 Programming interactive e-book, either in print or electronic form. (Rodzvilla Dep. 130:3-15.)

Similarly, Mr. Rodzvilla has also never used the App Press CMS tool, and did not even attempt to obtain an account with App Press in order to sign on to App Press's website to see how the App Press CMS tool appears aesthetically or functionally to App Press's customers. (Rodzvilla Dep. 91:20-92:1) Mr. Rodzvilla has also never downloaded, reviewed, or otherwise opened and used an app that was created using the App Press CMS tool. (See, e.g., Rodzvilla Dep. 104:14-16)

Thus, Mr. Rodzvilla's opinions regarding the similarity of App Press's products and Apress Media's products is nothing more than speculation by Apress Media, as neither product is even remotely similar let alone in competition. Apress Media's assertions to the contrary should be ignored and judgment on this issue should be entered in favor of App Press.

**F. Apress Media has failed to show that the alleged infringement has caused any harm to Apress's reputation as a "leading technical publisher."**

Apress Media has argued that consumer confusion would result in consumers' believing that Apress Media had lowered its standards for its products; however, Mr. Rodzvilla admitted that products created using the App Press CMS Tool could actually be of a higher quality than Apress Media's products, and that potential confusion by consumers as to whether an app made with App Press CMS Tool was "published" by Apress Media could thus cause consumers to believe that Apress Media had **<u>raised</u>** its quality standards and was producing a superior product than it had in the past.  (Rodzvilla Dep. 181:23-183:23.)  Accordingly, Apress Media has failed to show any harm even if consumer confusion were to occur, and summary judgment should be entered in favor of App Press.

## G. Apress Media has claimed, but failed to evidence, that consumers rely on a publisher's reputation when purchasing an Apress Media book or that Apress Media's reputation is at all related to the success of its books versus App Press.

Apress Media's expert has claimed that consumers, particularly in technical fields, rely on a publisher's reputation when purchasing books. (Rodzvilla Report ¶ 57.)  However, Apress Media's expert has submitted no data, surveys, or other information, to support this claim.  In fact, Apress Media has not even attempted to support which publishers are known to the base of public consumers and whether Apress Media is one of these known book publishers.  Without basis for the claim that Apress Media is publisher of reputation in the book-purchasing community, Apress Media's assertion should be excluded and their position denied.

Similarly, Apress Media's expert has demonstrated a fundamental misunderstanding as to what it means to compete both commercially and for purposes of trademark infringement. For example, because Apress Media has published a book on business journalism, Mr. Rodzvilla

believes that Apress Media is in competition with every university that teaches business journalism. (Rodzvilla Dep. 166:23-167:21.)

Similarly, Mr. Rodzvilla asserts that Apress Media is competing with all investment banks and service companies because Apress Media has published a book on investing. Mr. Rodzvilla also believes that Microsoft Word is competing with Apress Media because Microsoft Word could be used by an individual to create a document containing content and then post that Word document on a publicly-available website. (Rodzvilla Dep. 198:21-199:2.) Mr. Rodzvilla also believes that the publisher of children's books are in competition with a publisher of reference books for providing services to authors. (Rodzvilla Dep. 201:10-13.)

Mr. Rodzvilla admits that he is not an expert in law, including specifically trademark infringement law, that he has not read the cases cited in his report, that the excerpts of case law cited in his report were provided to him by counsel, and his understanding of that case law is simply that of a lay person. (Rodzvilla Dep. 202:13-204:13.) Thus, any opinions of his about the law or its application should be ignored as that of lay person without expertise who is not in a position to displace jury.

Mr. Rodzvilla also admitted that products created using the App Press CMS Tool could actually be of a higher quality than Apress Media's products, and that potential confusion by consumers as to whether an app made with App Press CMS Tool was "published" by Apress Media could thus cause consumers to believe that Apress Media had **raised** its quality standards and was producing a superior product than it had in the past. (Rodzvilla Dep. 181:23-183:23.)

> Attorney Cox: So, to your knowledge, though, of the apps that you know were created using the App Press CMS tool and the Apress Media books with which you're familiar, your position is that those apps and e-books do not compete with each other; is that correct?

11

> Mr. Rodzvilla: They don't compete with each other for -- let me think this through.  They don't compete with each other.  (Rodzvilla Dep. 184:12-18)
>
> Attorney Cox: So you -- your opinion is that Apress Media is not competing to sell its e-books to a consumer with any of the companies who have created an app with the App Press CMS Tool that's currently out on the app market?
>
> Mr. Rodzvilla: Apress is not competing with the companies who have created apps through-- well, right now, from my knowledge, they're not.  They could potentially compete if someone uses an App Press – uses the App Press CMS to create some kin do f investing tool, I would say, there is the DIY Investing.  Potentially.  I don't know that that has happened.  To my knowledge, that doesn't exist.
>
> (Rodzvilla Dep. 184:20-185:7)

In fact, Mr. Rodzvilla admitted that he had never heard of Carissa Kluver, the author of a blog post on which he relies, prior to finding her blog post pursuant to a google search he ran in an attempt to find support for the opinions set forth in his report.  (Rodzvilla Dep. 83:8-84:15.)  Mr. Rodzvilla also admitted that he does not know what qualifications Ms. Kluver has, if any, to support the positions in her article or whether her opinions were subject to any peer review or substantive analysis; instead, he admits he cites to her blog post merely because it makes points that were similar to Mr. Rodzvilla's position in this litigation and because "I need something to kind of provide in this [expert report that] it's not just me saying this."  (Rodzvilla Dep. 85:8-86:1.)  This logic applies similarly to the other articles on which Mr. Rodzvilla relies, as they are not academically or otherwise supported in any manner other than as being posted on the internet.  Simply put, the few "internet" voices that Mr. Rodzvilla has found to support his position are not reliable and do not make his opinion reliable by association.

Similarly, Mr. Rodzvilla admitted that he had never actually reviewed the interactive e-book published by Apress Media that he references in his report and compares to App Press's product.  (Rodzvilla Dep. 130:12-15.)  In fact, Mr. Rodzvilla admitted that he could not identify even a single interactive e-book that he had reviewed that was similar to the text-heavy, lengthy

12

books published by Apress Media; instead, the only interactive e-books that he had reviewed or that he could even identify consisted of children's books (such as Curious George books) and cookbooks that were published by companies other than Apress Media. (Rodzvilla Dep. 133:23-136:16.) These books were not the books at issue in this litigation and opinions derived from their review (such as Mr. Rodzvailla's) should be ignored. In fact, Mr,. Rodzvilla very specifically state that he had no knowledge of information relating to consumers who attempted to purchase or create this type of book with Apress Media, App Press, or anyone else:

> Attorney Cox: Have you done any surveys of consumers who purchased books by Apress Media and/or used App Press or similar products to see if they considered one or the other –
>
> Mr. Rodzvilla: I have not
>
> Attorney Cox: -- or thought they were in competition?
>
> Mr. Rodzvilla: No, I have not, and I don't know if I could. I think that would be something Apress would do because they would have that list. They would have had -- I don't even know if they have purchasing information, but possibly a way to contact people that purchased that content to ask those questions. But I have no way of reaching those -- that audience.
>
> Attorney Cox: Were you provided any statistics information or other documents along those lines from Apress Media to consider in creating your report?
>
> Mr. Rodzvilla: I was not.

(Rodzvilla Dep. 154:20-155:12)

### H. Additional Information

Mr. Rodzvilla defines a distribution channel as any store (online or brick and mortar) where products can be purchased "in one visit or in one check-out process." (Rodzvilla Dep. 243:15-16) However, by this very definition App Press's products and Apress Media's products are NOT sold in the same distribution channel, as the only place that App Press's product/services can be obtained are through App Press's website and Apress Media's

13

products/services are not sold or available on that website. Accordingly, to the extent Mr. Rodzvilla wishes to testify relating to distribution channels, it should only be to state that the parties are not in the same channel.

Mr. Rodzvilla also admitted that App Press is not listed as the seller or publisher of any of the apps that are in the app store and that were created with the App Press CMS Tool. (Rodzvilla Dep. 140:2-11.) Accordingly. Mr. Rodzvilla should only be able to testify that products created with the App Press CMS Tool are published and/or sold under a name other than that of App Press, and not that they are published in association with the App Press name.

### IV. CONCLUSION

Apress Media should be excluded from expert testimony except as set forth herein and as the Court further rules is just and proper.

Respectfully submitted,

/s *Jacob R. Cox*
Jacob R. Cox, Attorney No. 26321-49

**COX LAW OFFICE**
1606 N. Delaware Street
Indianapolis, Indiana 46202
T: 317.884.8550
F: 317.660.2453
jcox@coxlaw.org
*Attorney for Plaintiff/Counterclaim Defendant
App Press LLC*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via the Court's CM/EMF system, which will serve notice of filing on the following counsel of record via the CM/EMF system, on the 6th day of February, 2014:

| Deborah Pollack-Milgate | Jeff M. Barron |

14

| | |
|---|---|
| dmilgate@btlaw.com | jeff.barron@btlaw.com |
| Martin Gilmore<br>Martin.gilmore@wilmerhale.com | Mark G. Matuschak<br>mark.matuschak@wilmerhale.com |
| Louis W. Tompros<br>louis.tompros@wilmerhale.com | |
| Vinita Ferrera<br>vinita.ferrera@wilmerhale.com | |

/s *Jacob R. Cox*
Jacob R. Cox